No. 21,324.

W. E. WHITE, *Appellant*, V. THE CITY OF KANSAS CITY,
*Appellee.*

### SYLLABUS BY THE COURT.

HIGHWAYS—*Heavy Vehicles—Duty to Plank Bridges and Culverts—
Statute Applies to Horse-drawn Wagons.* A purpose to legislate
concerning horse-drawn wagons, as well as automobiles, is shown by
the amendment of a statute requiring certain precautions in crossing
a bridge, the relation of the two acts being indicated by the following
reprint, in which omitted words are enclosed in brackets, 'and added
words are italicised:

"*That* all persons owning, controlling, operating, or managing
steam *or gasoline* threshing-machines, sawmills, [or steam] traction
engines *or transfer wagons or vehicles* of any kind *used for the trans-
portation or distribution of oil or other merchandise or commodity and*
[in] moving the same over the public highway are required to lay
down planks not less than one foot wide, three inches in thickness,
and of sufficient length, on the floor of all bridges and culverts situated
on the public highway, while crossing the same, for the wheels of said
engine[s] of any kind to run on while crossing such bridge or culvert;
Provided, That this section shall not apply to any machine or engine
not exceeding [one] *three* tons in weight. . . ."

Appeal from Wyandotte district court, division No. 1; ED-
WARD L. FISHER, judge. Opinion filed February 9, 1918.
Affirmed.

*James L. Hogin,* and *Roy R. Hubbard,* both of Kansas City,
for the appellant.

*H. J. Smith, Lee Judy,* and *Thomas M. Van Cleave,* all of
Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: W. E. White, while hauling rock in a horse-
drawn wagon, was injured by the giving way of a bridge in
Kansas City, Kan. He brought an action against the city. A
demurrer to his evidence was sustained, and he appeals.

The wagon used by the plaintiff weighed 1,800 pounds and
carried a load of 5,200 to 5,500 pounds. He had not laid down
planks for the wheels to run on while crossing the bridge. The
case turns upon the question whether the law requiring that
to be done in the case of loads weighing more than three

tons applies to horse-drawn vehicles, or is limited to those moved by mechanical power. The first legislation on the subject was enacted in 1886. (Gen. Stat. 1909, § 7317.) The statute in effect at the time of the injury was passed in 1911. It was not in form an express amendment of the earlier one; but in the course of a general revision of the road law, the section cited was repealed and a new one inserted which was obviously based upon it, the practical effect being to amend rather than to repeal it. (Gen. Stat. 1915, § 8799.) The relation of the two sections is shown by the following reprint, in which words used in the original act but omitted from the amendment are inclosed in brackets, and words added by the new act are italicised:

"*That* all persons owning, controlling, operating or managing steam *or gasoline* threshing-machines, sawmills, [or steam] traction engines *or transfer wagons or vehicles* of any kind *used for the transportation or distribution of oil or other merchandise or commodity and* [in] moving the same over the public highway are required to lay down planks not less than one foot wide, three inches in thickness, and of sufficient length, on the floor of all bridges and culverts situated on the public highway, while crossing the same, for the wheels of said engine[s] of any kind to run on while crossing such bridge or culvert; Provided, That this section shall not apply to. any machine or engine not exceeding [one] *three* tons in weight. *Provided further, That no person, firm or corporation seeking to recover damages against any city, township or county under the provisions of this section, shall secure a judgment therein, unless the jury shall find that such person, firm or corporation had before receiving the injury complained of, complied with the provisions of this section.*"

The addition of "gasoline" to the enumeration of the kinds of threshing-machines referred to was almost a matter of course in view of the extended use of the gasoline engine. The word "steam" as it appeared the second time in the original section was obviously omitted in the revision on the theory that it was superfluous, possibly because the prior phrase "steam or gasoline" was regarded as qualifying saw-mills and traction engines as well as threshing-machines, but more probably because such a qualification was deemed unnecessary in referring to vehicles which by their very nature are self-propelled. The important and doubtful question is as to the intention indicated by adding to the list of vehicles covered by the act the clause "or transfer wagons or vehicles [of any kind] used for the transportation or distribution of

oil or other merchandise or commodity." The city maintains
that the purpose was to extend the application of the law to
all vehicles used for carrying goods (as distinguished from
passengers), whether driven by mechanical power or drawn
by horses. The plaintiff contends that the object was to in-
clude only goods-carrying vehicles which were operated by
steam or gasoline. To this court it seems (as it evidently did
to the trial court) that the insertion of the new clause in the
existing statute (for that is what the action of the legislature
amounted to) naturally suggests a purpose to make the stat-
ute, which had formerly applied only to threshing-machines,
sawmills, and traction engines, cover also all vehicles carrying
goods, irrespective of the means by which they are propelled.
That interpretation therefore should prevail, unless some
specific and sufficient reason exists to the contrary.

The plaintiff insists that the words "steam or gasoline"
should be regarded as limiting "transfer wagons and vehi-
cles," as well as "threshing-machines," because such is the
proper construction of the language used, according to the
rules of grammar, and also because by the rules of associated
words and of *"ejusdem generis"* the terms added to the orig-
inal list of vehicles should be regarded as relating only to
articles of the same general character as those previously
named. Neither ground impresses us as well founded. Gram-
matically the language appears open to either construction,
but the added terms seem so specific as to render the other
tests inapplicable. While in many connections the word
"wagon" might be construed as including automobiles, it seems
unlikely that in framing legislation in 1911, the draftsman of
a bill would have used the phrase "transfer wagons" if he had
had in mind only automobiles; in that case he would more
naturally have written "motor trucks," or used some equiva-
lent expression. It is suggested that a sufficient reason for
regulating the crossing of a bridge by an automobile, while
leaving the passage free to a horse-drawn wagon of equal
weight, can be found in the fact that the wheel base of the
former is shorter than the distance from the heads of a team
of horses to the rear wheels of a wagon they are drawing, and
the load on a motor truck is so distributed as to increase the
stress. Granting that this may be so, we do not find in the

language used a purpose to make such a distinction. The object of the legislature appears to us to have been to extend the statute so as to reach all vehicles the weight of which was at all likely to exceed the newly fixed weight of three tons, pleasure and passenger vehicles being excluded doubtless upon the theory they would seldom or never pass that limit.

It is suggested that if it had been the purpose of the legislature in amending the law to make it applicable to horse-drawn vehicles, a change would have been made in the expressions "for the wheels of said engines of any kind to run on," and "this section shall not apply to any machine or engine not exceeding three tons in weight." To have made the language quoted entirely appropriate it would doubtless have been better to have changed it even if only automobiles had been in contemplation, for "engines" and "machines" are not words naturally suggesting even motor trucks. Where the subjects referred to in a piece of legislation have once been fully enumerated, the omission of some of them from a subsequent list is readily regarded as inadvertent, and "the last enumeration may be extended by construction to correspond with the one first made." (*Landrum v. Flannigan,* 60 Kan. 436, 439, 56 Pac. 753.)

By a separate section a violation of the provisions of the section already referred to is made a misdemeanor. (Gen. Stat. 1915, § 8801.) It is argued that the statute being penal should be strictly construed. Nowithstanding the penalty, the purpose of interpretation is to arrive at the real intention of the legislature (36 Cyc. 1183-1185), and we regard that as reasonably clear.

The section of the statute (Gen. Stat. 1915, § 8800) immediately following that under consideration imposes upon persons operating steam traction engines certain duties relating to their conduct while passing other vehicles. It is argued that the general subject of these sections and the next is the regulation of motor vehicles, and that they should be construed as parts of a general plan having that purpose. If that were true of the original enactment, the amendment referred to deprives the argument of most of its force.

The legislature at its last session replaced the section we have been considering by a new one. (Laws 1917, ch. 80, § 29)

the application of which is limited to persons operating "a steam or gasoline threshing engine, sawmill engine, or traction engine." The plaintiff considers this an indication that the purpose from the first has been to confine the application of the statute to motor vehicles. A legislative interpretation does not operate retroactively—at least not with controlling force. But we regard this new statute as evidencing a change of policy rather than an attempt to declare the meaning of an existing law.

The judgment is affirmed.